Good morning and welcome to the Ninth Circuit Court of Appeals. My name is Morgan Christen. I'm one of the judges on the circuit court. My chambers are in Anchorage, Alaska, but I'm delighted to be sitting here in Portland this week with two of my colleagues from Phoenix. Judge Hurwitz is on my left, your right, from Phoenix, and Judge Beatty is on my right, your left. I just have a little housekeeping to do before we go on to the first case on the oral argument calendar. We've submitted three cases and I need to announce them. They are United States v. Bounds, case number 24-7253. Olson, 25-434. Armstrong, 25-529. And the first case on the oral argument calendar is United States v. Brown, 25-5757. Counsel, come on up to the podium. I'll just take one second here to get my iPad opened up and get ready. That way we won't have my shuffling of papers on the record. Okay, I'm all set. Peter Lansedale Thank you. Good morning, your honors, and may it please the court. My name is Peter Lansedale and I represent the defendant and appellant in this matter, Mallory Brown. Of my 10 minutes, I would request two minutes to reserve two minutes for rebuttal. Mr. Brown has presented two issues on appeal. First, whether or not he should be permitted to withdraw his guilty plea based on newly discovered evidence. And second, whether or not 18 U.S.C. 2113A, the federal bank robbery statute, is categorically a crime of violence. I'll start with whether or not Mr. Brown is permitted to should be permitted to withdraw his plea. Is that solely based on the newly discovered evidence? Pardon me, your honor. Is that solely based on the evidence? Yes, your honor. We presented a different argument. How is it newly discovered? It is newly discovered. So the the the district court and the government both argue, well, Mr. Brown made these calls. Of course, he knows about them. That's not newly discovered. Our argument is it's not the fact that he made the calls that's newly discovered. It's the fact that the FBI recorded them without telling anyone. But so what? How did they? Oh, please go ahead. No, I'm trying to figure out how the how the calls help him. They weren't submitted to the court. The court couldn't look at them. That's that's a problem. But even accepting your representation of them, how do they help him? Sure. They help him insofar as you have a man here who says, hey, I have these firearms. I'm trying to give them up. He calls the FBI. He calls the marshals. He calls the state AG's office. When you say forgive me for interrupting, but your time is limited. So I'm beginning from the premise that we have a felon who knows he can't possess the firearms and he's calling to say, please come take these firearms out of my possession. Please correct me if I'm wrong, but that's my understanding. That is correct. OK. And so I guess what I wanted to ask was this. I understand that this might mitigate his punishment. I tried to I I was a felon in possession. In fact, he's admitting in these calls that he's, in effect, a felon in possession. I don't know if he ever says I'm a felon, but he's a felon. We know he's a felon and we know he's in possession now from these calls. He wants to, I think, argue to the judge, I'm not such a bad guy because I try to give him up. But as I read the record, he did get to he did get to argue that he did. But he did not get to argue it in front of a jury. Well, but why why is why is that an argument that goes to guilt as opposed to mitigation of punishment? In other words, it strikes me that if one is a felon and one is in possession of weapons, that's the end of the jury analysis. It's not, gee, you're going to give him up at some point. Had you expressed the desire to be rid of them? Right. I think it's the I think the calls demonstrate how he came into possession of them. His mother had passed. They were living together and he was trying to she she passed away. He has them. He can't stay in the apartment. He has to leave. He needs to get rid of it. Doesn't he know that? And I'm getting back to Judge Kristen's question at this point. He knows all that. Uh, he could he could have argued that to the jury with or without the recording of the calls. Right, Your Honor. But there's a difference. And if I can pose a hypothetical to the panel here, imagine you have a defendant who has been charged with some violent crime and he says, well, I couldn't have done it. I have an alibi. I was at a major league baseball game. And then he pleads guilty. And then later, defense counsel discovers, well, the MLB records these games. And at the top of the seventh, there he is. On the Jumbotron. On the Jumbotron. There he is. But that's corroborative. Your argument is that this would have reinforced what he already knew or corroborated what he would have said? It would have corroborated in my experience doing criminal defense, a defendant's unsupported, uncorroborated assertion. I didn't do it. Doesn't hold a lot of evidentiary weight. But wasn't it still uncorroborated if he didn't submit the evidence to the district court? Why did why did he not submit the recorded calls to the district court?  Some. We had a few reasons not to some legal, some practical one. I don't I didn't find any cases that said you have to submit the evidence to the district court from a practical matter. I've gone to trial with Mr. Lowney. He is very quick on his feet. He is even better when he has time to think about things. I did not want to submit all of the recordings and open the door to many questions that I the district court have asked that would have revealed our entire defense strategy. But you're asking us to find that they would have made a big difference in your client's decision had he had he had access to them before he pleaded guilty. Wouldn't it be helpful for us to see them? Yes. But we can't because you didn't put him in the record. That's correct. Counsel, what's the applicable standard of review? The applicable standard for review on withdrawing a plea is abuse of discretion. Right. Do you want to go on to your other argument? If the court would like me to, I understand that this this argument is foreclosed by Watson. The only reason we're bringing it up, I think, is to preserve it for appeal, depending on how the panel decides this case. I think Burwell has out of the D.C. Circuit has a good divisibility analysis that goes into the history of when Congress in 1986 changed the federal bank robbery statute to include extortion. Burwell has a good analysis on the syntax there where it's the statute doesn't use semicolons. It uses commas. It's in the same paragraph as the forced violence and intimidation language. It's not broken out into a separate paragraph, let alone a separate subsection. Watson should be revisited. This issue deserves more attention. Watson, in conclusory fashion, says it's divisible. Extortion is a separate crime, separate element, not separate means. But it doesn't go into the analysis that I think this issue deserves. All right. Judge Beatty, anything else to interpret? No. Do you want to reserve the rest of your time? I will. Thank you, Your Honor. Good morning, Your Honors. Brian Lowney, AUSA from the District of Montana. We hear you click on your feet. That's what I hear, Your Honor. I hope to vindicate that opinion. I'm here on behalf of the United States. As the Court noted, I'll address the motion to withdraw the change of plea, as I think that is the major issue in front of this Court. The standard is abuse of discretion there. The District Court made this decision without, I think in part, because they did not have the evidence that defendant talks about being so important to his case. As Your Honors will note, at the excerpt of Record 19, the District Court's order reads, quote, however, despite defendant's possession of the voicemail recordings, defendant did not submit them to the Court as evidence. Interestingly, defendant did not provide any evidence at the hearing whatsoever. As such, there is no way for the Court to determine whether the recordings are indeed exculpatory or whether they are, as the government argued, inculpatory, end quote. Why didn't you submit them? Well, because he's quick on his feet. He is also quick on his feet, Your Honor. I think the Court will see from the way the record unfolded, this was not the central argument that Mr. Brown presented in his motion to withdraw his plea originally, though this is not an appeal in front of this Court now. What he originally said at the District Court primarily was, I want to withdraw my plea because I didn't understand the guidelines. And I think you can see that from the way that the pleadings unfolded. But also, counsel's argument at the motion hearing was, I'll quote again, this is excerpt of Record 80 in lines 8 to 10, counsel said, quote, the thrust of our arguments in our motion and briefing is that Mr. Brown relied on inaccurate advice as to what his guidelines would be, end quote. And then he went on to detail that the guidelines were a lot higher than Mr. Brown expected. And in the briefing coming up to that hearing, there was a brief filed saying he wanted to withdraw his plea. But the focus of that was, I didn't understand what my guidelines were. Then there was a small mention of having some exculpatory evidence that he discovered in the form of talking to three witnesses. That's what is in the briefing. Does the briefing explain who those three witnesses were? The record does not explain that. I can't figure out. Well, maybe I think there is some indication. But let me just ask you why the delay in producing these to the defendant? Well, Your Honor, the government was unaware of them. We became aware of them because the defendant alerted us to them. And then we went to go get them at his request. Now that the underlying agency that investigated this case, this was a case in Northwest Montana that occurred on a train. Eventually, the ATF was called to investigate. These calls that the defendant is talking about were made to the FBI and to local law enforcement, the King County Sheriff's Office in Seattle. So those are the recordings that were eventually produced. The summary of why the government didn't have them is because we weren't aware of them. They were not a part of what the case investigation entailed originally. In terms of timing, how, because I can't tell from this record, how long before the guilty plea were the calls made? Before the guilty plea or before the case was charged, Your Honor? Well, I'm thinking of the guilty plea because his contention is, had my client known about this, they wouldn't have pleaded guilty. So I'm trying to figure out what the gap was. Well, I don't want to go outside the record too much unless the court wishes. No, I don't want you to go outside the record at all. What you're telling us, the reason I can't find out from the record is that it's not in the record? That's right, yes. Well, wait, I don't understand that. Isn't the gap that we're talking about the gap between the date of the arrest and the date of the plea? You know that. To Judge Hurwitz's question, I think I was trying to address when the calls were made and that timeline to when the change of plea. Okay, so I'm asking a different question. I'm sorry, Your Honor. I'm trying to figure out why it took the government so long to find these. The interval, he gets arrested and then he decides to enter his guilty plea. And on the day he entered his guilty plea, apparently he didn't know that we had the equivalent of the photo on the jumbotron that corroborates his story. So how long was that? Did he enter his plea right away? And that's why the government didn't know it had this evidence? Or was there some, what's that interval? Do you know? He entered his plea in January of 2025. Okay. And the evidence, I. And the day on the train when they arrested him was? It was the prior year of January 2024. So then he was indicted mid-year and then he pled shortly thereafter. Okay, and the interval that you were trying to pin down for Judge Hurwitz, that's what you don't know? That interval? I know that personally because I have the calls. I'm just saying it's not in the record. So I certainly can address that if the court wishes. But I, as it's not. That's fine. That's fine. I think we've monopolized. Judge Beatty, do you have more questions? More questions? On the Watson issue, I assume a petition for a hearing in bank is coming. And you'll get a chance to respond on that? Perhaps, Your Honor, yes. As the court knows, the government's position is that this court is bound to follow Watson. I think the reasoning is sound. It is the Burwell case is an outlier decision among the circuits, as the government cited in its brief. The First, the Second, the Eleventh Circuits have found, similarly to the Ninth Circuit, about the divisibility of 18 U.S.C. 2113a. I think that is settled by my view of those cases that address it. Besides Burwell, they have the better argument as to why the statute is divisible. And why it qualifies as a crime of violence in this particular case. I will just note that when the district court was evaluating whether Mr. Brown was offering a fair and just reason to withdraw his plea, one of the things that the district court has to evaluate in the newly discovered evidence prong is whether the new reason is offered in good faith. And I highlight that to say that this reason was not, again, the thrust of the defendant's motion at the district court level. And I think that the district court's finding, particularly the district court says, again, in excerpts of Record 19 and the order, denying the motion to withdraw his plea, quote, the occurrence of defendant's phone calls might be new information to defendant's counsel, but certainly not to defendant, end quote. And reading that order, I think there is at least some inference that this reason is not being offered in good faith. That, in fact, the reason that the defendant is trying to withdraw his plea is because he was surprised that his guidelines range was so high. And now shelters under this argument that this evidence is somehow newly discovered. He also has to show that he subjectively did not know that this evidence existed, which I don't think he can show. But certainly the record doesn't contain evidence of. There's argument from counsel saying he didn't know they were recorded, but there's no evidence of that. There's no affidavit from the defendant. There's no other witness that says that. The calls themselves are not in evidence. And so it would be difficult, I think, for this court to say that the district court's decision was illogical, implausible, or without support and inferences from the record when it denied his motion to withdraw the plea. Lastly, if the defendant satisfies those prongs that it was made in good faith and that he subjectively did not know about this evidence, he also has to show that it was objectionably reasonable not to have known about or anticipated this material as well. And so in that fashion, what he is claiming here, at least in front of this court, is that he called a police agency and could not have anticipated that this was going to be memorialized in some way, which I think is not a reasonable argument to make. When you call an agency like the FBI or even the King County Sheriff's Office, they are making a record of that in some way, whether it's recorded or whether there's a report. That is very clear to people that are engaging with law enforcement that their information that they're giving them is likely to be memorialized in some way. So I don't think it's objectively reasonable for him to say that he couldn't have known about this evidence. And then lastly, I realize I said lastly, now this is really lastly. Even if the court finds all those things, the district court needed to find that the defendant, this reason could have at least plausibly motivated a reasonable person in the defendant's situation not to plead guilty. And so the only evidence in the record that the district court had and that this court has about what these calls say is inculpatory. Now, counsel says there's a dispute about that, that maybe they're exculpatory in some way, but the district court didn't have and this court does not have any way to judge that. Would it have been a defense if he could have shown what he just represented, that his mom died and the guns were in her house and he needed to get them out of there? As I said in the hearing transcript, I don't think it is a defense. I can't see the defense. It is not clear to me what defense that supports. I think there is some argument and mitigation at sentencing, but it is not a defense to the crime. Anything further? No, your honors. Thank you. Thank you. Thank you, your honors. Mr. Lowney zeroed in on the second prong of the Hernandez test that a person could objectively not have anticipated this evidence. And I think the strongest argument that, well, no, a person could not have anticipated this is, one, when I called the FBI, they did not inform me that the call was being recorded. I'm like, okay, sure, maybe the FBI records the calls, but the government didn't even know about them. The government whose job is to go out and gather this evidence and then prosecute the case did not know these recordings existed. But wasn't there a difference in the government's knowledge and the defendant's knowledge and that the defendant knew he made the calls? The government at that point didn't even have reason to believe he'd made the calls. Sure. Right. Right. There is a difference there. And I guess I would just circle back to the jumbotron at the Major League Baseball game. I mean, of course, that hypothetical defendant knew he went to the game. And if he doesn't tell anyone else, well, no, I went to the game. But if you had a video of yourself on a jumbotron, you would have submitted that to the court. Right. I would have. Yeah, that one I would have. And I think one of the reasons that we haven't gotten into yet is the timeline here is important. We file the motion to withdraw. I give Mr. Lowney a call and say, I have a hunch that there might be recordings here. I don't know that they exist. My client doesn't know. Would you look into this for me? And to Mr. Lowney's credit, he jumped on it. But we didn't get these recordings until a few days before the motion to withdraw hearing and after the reply brief in support of that motion had been filed. And so we get them a handful of days before this hearing. I review them and, OK, well, now our entire argument changes. Now it's not just about the guidelines. Now it's just about like, oh, I made these calls. Now we have proof of it. One other thing that I want to end on, if the panel doesn't have any more questions, is that it's ambiguous whether or not this is inculpatory or exculpatory. And prima facie, OK, well, that would support this argument that, OK, well, the district court didn't err. But I would argue to this panel that the Rule 11 standard for withdrawing a plea is supposed to be liberal and applied, or it is supposed to be generous and applied liberally. And I would argue that under that standard, ambiguity should be resolved in favor of the defense. And as Judge Hurwitz asked, if they were so inculpatory, the government could have submitted them. The government had them. On the other hand, if they were so exculpatory, you could have submitted them. Correct, Your Honor. That's our problem making a decision about. And the poor district judge says, well, nobody gave them to me. So how am I supposed to know whether they're ambiguous, not ambiguous, plainly exculpatory or plainly inculpatory? And how do we say she abused her discretion? It's a very high standard. And it's an important issue to your client. So we're really asking for your best shot. Well, my best shot is that the timing here changed our argument just before the hearing. I mean, there are five phone calls. One of them is well over an hour long. I think the timing is helpful to understand as a response to the government's argument that this may not have been in good faith and that you really shifted the focus of the motion. But so I'll grant you that. But we're still here without the evidence. And we still have the standard, right? So we'd have to show that this is new evidence. Your client didn't know, couldn't have known, shouldn't have known about it. And then even if you go with the jumbotron theory, which is that he knew it made calls. He didn't know necessarily that they were recorded. By the time you showed up at the hearing, you knew all that. And so without submitting the evidence, it seems like it's really tough to say that district court abused her discretion. Sure. I certainly understand your Honor's point there. Is it your contention? I'm interrupting you, forgive me. But is it your contention that it would have been, as a matter of law, that it would have been a defense to the charge if these guns had been not his, but in his mom's house and she died and he needed to somehow get them returned or turned in? Yes. So that's a little bit difficult because of Johnson, which says that there is no, there is, may I finish? Yeah, please. Because I don't think it is a defense. And if you think I'm wrong about that, maybe this is the last corner that I haven't fully explored. But what about Johnson? I think under Johnson, which precludes an innocent possession defense, I think that door might be closed. But I do think it would change how a jury views the case. I do think that a jury looking at, okay, his mom dies, he has these guns. What is he supposed to do? Okay. Fair enough. Anything further, Judge Beatty, Judge Hurwitz? Thank you for your argument, both of you. Thank you, Your Honors. We'll take that case under advisement and go on.
judges: CHRISTEN, HURWITZ, BADE